**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| VIDYA SAGAR,<br><br>        *Plaintiff*,<br><br>   v.<br><br>JACOB LEW, Secretary of the Treasury,<br><br>        *Defendant*. |

Civil Action No. 14-1058 (RDM)

**MEMORANDUM OPINION AND ORDER**

Plaintiff Vidya Sagar, proceeding *pro se*, was terminated from his position at the Department of Treasury during his one-year period of probationary employment.  He now sues that Department for violations of the Age Discrimination in Employment Act ("ADEA"); violations of the federal Whistleblower Protection Act ("WPA"); and violations of ethical rules and agency regulations, which he asks this Court to enforce under the general judicial review provisions of the Administrative Procedure Act ("APA").  On the Department's motion, the Court will dismiss Sagar's WPA claim and the APA claims for lack of subject matter jurisdiction, leaving only Sagar's claims under the ADEA.  Sagar's cross-motion for partial summary judgment on the APA claims, accordingly, will be denied.

## I.      BACKGROUND

For purposes of the Department's motion to dismiss, the following allegations in Sagar's complaint are taken as true.[1]  *See, e.g.*, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

---

[1]  All references and citations to the complaint refer to the amended complaint found at Dkt. 41.

On December 20, 2010, Sagar began a one-year probationary term as an "IT Specialist" at the Department of the Treasury.  Compl. ¶ 7; *see* Dkt. 41 at 25 (Compl. Ex. 2).  He was sixty-three years old at the time.  *See* Compl. ¶ 54.  This position carried a Grade 15 on the federal government's General Schedule ("GS-15") and came with a salary in excess of $123,000.  *Id.* ¶ 7.  Sagar holds a Ph.D. and brought a wealth of experience to his new job, including "extensive experience in information technology" with the consulting divisions of PeopleSoft and Oracle. *Id.* ¶¶ 4–5.  In these positions, he consulted with more than a dozen prominent corporations, including CitiGroup, MetLife, and JPMorgan Chase.  *Id.* ¶ 5.

After joining Treasury, Sagar worked on the Premium Assistance Tax Credit project ("PTC"), a part of the wider effort to implement the Patient Protection and Affordable Care Act. *Id.* ¶ 8.  Sagar had a number of managers in this role but did not manage anyone himself.  *Id.* ¶¶ 9–10.  He alleges that he "took initiative" in creating a "strategic team at PTC."  *Id.* ¶ 16.  He also alleges that during his time on the PTC project, he worked on several significant assignments, helped develop new members to the team, saved the project money with his ideas, and received positive feedback from managers.  *Id.* ¶¶ 17–33.

Sagar was particularly dissatisfied with at least two of his managers—Matthew Brady and Peter Gianokos.  *Id.* ¶¶ 10, 12, 36–42.  He alleges that both men were "age conscious" and "made comments about Sagar's age on multiple occasions."  *Id.* ¶ 43.  These comments included questions about how long Sagar had been employed, questions about his exact age, comments about how old he looked, and discussions about retirement (although Sagar seems to allege that only some of these comments or questions came directly from Brady and Gianokos and others came from fellow employees acting as their "surrogates").  *Id.* ¶¶ 43–47.  Sagar also alleges that

his managers "[w]asted time [with] futile activities," such as spending eight-to-ten weeks training new employees. *Id.* ¶ 73.

Sagar received a poor annual review from Brady in September 2011, and he met with Gianokos to discuss the review the following week. *Id.* ¶ 62. Gianokos said he would not overrule Brady. *Id.* Sagar asked if a higher level official could review the decision, but Brady and Gianokos declined. *Id.* ¶ 63. On October 27, 2011, Brady and Gianokos told Sagar that they were firing him for "performance and behavior issues" and gave him an unsigned letter explaining the decision. *Id.* ¶ 67; *see* Dkt. 41 at 23 (Compl. Ex. 1). On November 2, 2011, Gianokos gave Sagar a copy of a more-detailed termination letter, which was also dated October 27, 2011. Compl. ¶ 70. That letter described five instances in which Sagar had "failed to meet the expectations of [his] position and/or displayed unprofessional behavior." Dkt. 41 at 25 (Compl. Ex. 2). It further explained that Sagar had been "counseled regarding the[se] deficiencies" but that "there ha[d] been no improvement." Compl. ¶ 70. Sagar alleges that Brady was planning to fire him even before he joined the PTC team and that he violated Department ethical rules and principles in the process. *Id.* ¶¶ 56–58. Sagar was later replaced by a younger employee who was then forty-seven years old, and whom Sagar says was not qualified for a GS-15 position. *Id.* ¶ 52.

Sagar challenged his termination with Treasury's Equal Employment Opportunity office. *Id.* ¶ 82. He alleges that, at some point during this process, the Department admitted that Sagar had stated a "prima facie case of age discrimination" because a younger GS-15 in his office was not fired and because Sagar had been replaced by a younger employee. *Id.* ¶ 85. Sagar alleges that he properly exhausted his age discrimination claim before filing suit. *Id.* ¶ 88.

Sagar then filed suit in this Court.  The complaint includes a purportedly non-exhaustive list of "bas[e]s" for the lawsuit.  *See* Compl. ¶ 90.  Based on that list, the entirety of the complaint, and Sagar's descriptions of the complaint in his opposition brief, Dkt. 56 at 1, the Court construes Sagar's claims as follows:

Count One alleges "[a]ge discrimination" in violation of the ADEA, 29 U.S.C. § 621, *et seq*.  Counts Two and Three allege that Treasury violated ethical rules and regulations related to Sagar's termination, which Sagar seeks to challenge under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq*.  Count Four alleges "[r]etaliation/reprisal," which the Court construes as an ADEA retaliation claim under 29 U.S.C. § 623(d).  Count Five alleges "[w]histleblowing" in violation of the federal Whistleblower Protection Act, 5 U.S.C. § 2302(b)(8).  Finally, Count Six alleges "[h]arassment."  The Court will construe this as an ADEA hostile work environment claim.  *See Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 440–41 (5th Cir. 2011); *Ware v. Hyatt Corp.*, 80 F. Supp. 3d 218, 226–27 & n.5 (D.D.C. 2015).

Now pending before the Court are the Department's motion to dismiss, Dkt. 55, and Sagar's cross-motion for partial summary judgment as to Counts Two and Three, Dkt. 64.

## II.     STANDARD OF REVIEW

Two legal standards govern the Court's consideration of the pending motions.

First, the Department has moved to dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, although the 12(b)(6) portion has been withdrawn.  *See* Dkt. 58 at 2.  A motion to dismiss under Rule 12(b)(1) challenges the Court's jurisdiction to hear the claim, and may raise a "facial" or "factual" challenge to the Court's jurisdiction.  A facial challenge asks whether the plaintiff has pleaded facts sufficient to establish the court's jurisdiction, while a factual challenge asks the court to "consider the complaint supplemented by

undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992). In other words, a facial challenge is confined to the four corners of the complaint, while a factual challenge permits the court to look beyond the complaint to satisfy itself that it has jurisdiction to hear the suit. Whether the motion to dismiss is facial or factual, the plaintiff bears the burden of establishing by a preponderance of the evidence that the court has subject-matter jurisdiction. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

In addition, Sagar has cross-moved for partial summary judgment. Summary judgment is appropriately granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Holcomb v. Powell*, 433 F.3d 889, 895–96 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the outcome of the litigation. *Liberty Lobby*, 477 U.S. at 248; *Holcomb*, 433 F.3d at 895. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Scott v. Harris*, 550 U.S. 372, 380 (2007); *Liberty Lobby*, 477 U.S. at 248; *Holcomb*, 433 F.3d at 895. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ." Fed. R. Civ. P. 56(c)(1)(A).

The party seeking summary judgment "bears the heavy burden of establishing that the merits of his case are so clear that expedited action is justified." *Taxpayers Watchdog, Inc. v. Stanley*, 819 F.2d 294, 297 (D.C. Cir. 1987). When a motion for summary judgment is under consideration, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Liberty Lobby*, 477 U.S. at 255; *see also Mastro v. Pepco*, 447 F.3d 843, 850 (D.C. Cir. 2006). The non-movant's opposition, however, must consist of more

than allegations or denials and must be supported by affidavits, declarations, or other competent

evidence, setting forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ.

P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  The non-movant must provide

evidence that would permit a reasonable jury to find in its favor.  *See Laningham v. U.S. Navy*,

813 F.2d 1236, 1241 (D.C. Cir. 1987).  If his evidence is "merely colorable" or "not significantly

probative," summary judgment may be granted.  *Liberty Lobby*, 477 U.S. at 249–50.

## III.    ANALYSIS

The Department originally moved to dismiss some counts of the complaint for lack of

subject-matter jurisdiction under Rule 12(b)(1) and others for failure to state a claim under Rule

12(b)(6).  *See* Dkt. 55.  But to avoid the prospect that its motion might be converted to one for

summary judgment—thereby opening the door to discovery—the Department stated in its reply

that it was withdrawing its arguments for dismissal under 12(b)(6).  Dkt. 58 at 2.  The Court will

therefore focus on the Department's jurisdictional arguments and Sagar's cross-motion for

summary judgment.  Because Sagar is proceeding *pro se*, the Court will "liberally construe[]" the

complaint and hold it to "less stringent standards than formal pleadings drafted by lawyers."

*Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

## A.    The Department's Jurisdictional Arguments

### 1.    *Sagar's Whistleblower Claim*

The fifth count of Sagar's complaint alleges violations of the federal Whistleblower

Protection Act, codified in relevant part at 5 U.S.C. § 2302(b)(8).  *See* Compl. ¶ 90; Dkt. 56 at 1.

The Department moves to dismiss this claim for lack of subject-matter jurisdiction on the ground

that Sagar never presented his whistleblower claim to the Office of Special Counsel ("OSC"),

and thus failed to exhaust his administrative remedies.  *See* Dkt. 55 at 8–9.  Sagar responds that

OSC review was not required because this is a "mixed" case. *See* Dkt. 56 at 38–39. As explained below, the Court concludes that Sagar's probationary status means this case is not "mixed" and that the Court therefore lacks jurisdiction over his WPA claim.

In the default case, a federal employee alleging WPA violations must first present that claim to the OSC, which investigates the matter. 5 U.S.C. § 1214; *Stella v. Mineta*, 284 F.3d 135, 142 (D.C. Cir. 2002). The OSC may then petition the Merit Systems Protection Board ("MSPB") on the employee's behalf, or, if the OSC finds no wrongdoing, the employee may file with the MSPB himself. *Stella*, 284 F.3d at 142 (citing 5 U.S.C. §§ 1214(a)(3), 1221). The MSPB's decision is then appealable to the Federal Circuit. *Id.*; 5 U.S.C. § 7703(b)(1)(A). Under this default procedure, the case at no point goes before a district court, and the district court at no point has jurisdiction to hear the WPA claim. *Stella*, 284 F.3d at 142; *Bourdon v. Mabus*, No. 11-5302, 2012 WL 1155737 (D.C. Cir. Mar. 28, 2012) (per curiam).

But the district court *does* have jurisdiction over a WPA claim when it is brought as part of a "mixed case." *Stella*, 284 F.3d at 143–44. A case is "mixed" if (1) the employee "has been affected by an action which [he] may appeal to the [MSPB]," including, potentially, an agency reprisal prohibited by the WPA; and (2) the employee alleges that the action was also motivated by certain types of unlawful discrimination, including discrimination prohibited by the ADEA. 5 U.S.C. § 7702(a)(1); *Butler v. West*, 164 F.3d 634, 638 (D.C. Cir. 1999). An employee bringing a mixed case has a choice: he may file a "mixed case appeal" of the agency's action directly with the MSPB, or, in the alternative, he may file a "mixed case complaint" with the agency's Equal Employment Opportunity (EEO) office. § 7702(a)(1) & (2); *Butler*, 164 F.3d at 638; 29 C.F.R. § 1614.302(b). Because the "mixed case appeal" option exists, an employee with a mixed case need not first submit his claim to the OSC. *See* 5 U.S.C. § 1214(a)(3). Once the MSPB or the

agency's EEO office renders a decision or enough time passes, the employee may bring his "mixed" case in district court. *Butler*, 164 F.3d at 638–39 (summarizing applicable procedures).

This is not a mixed case, however. Sagar's case qualifies as "mixed" only if he "has been affected by an action *which [he] may appeal to the [MSPB]*." § 7702(a)(1)(A) (emphasis added); *Abou-Hussein v. Mabus*, 953 F. Supp. 2d 251, 260 (D.D.C 2013); *Greenhouse v. Geren*, 574 F. Supp. 2d 57, 66–67 (D.D.C. 2008); *see also Cruz v. Dep't of Navy*, 934 F.2d 1240, 1246 (Fed. Cir. 1991). But, as Sagar acknowledges in his opposition brief, he "was terminated during probation and has no access to [the] MSPB." Dkt. 56 at 38. Indeed, "the appeal rights of a probationary employee are extremely limited." *Mastriano v. FAA*, 714 F.2d 1152, 1155 (Fed. Cir. 1983). The MSPB's appellate jurisdiction is set forth in 5 C.F.R. § 1201.3, and, of the three types of appeals potentially relevant to the facts Sagar alleges, none are available to probationary employees with less than one year of service. *First*, the MSPB has jurisdiction over major "adverse actions"—including removal—as defined in chapter 75 of the Civil Service Reform Act (CSRA). 5 C.F.R. § 1201.3(a)(1); *accord* 5 U.S.C. § 7513(d). But, as a probationary employee with less than one year of service, Sagar was not an "employee" within the meaning of that statute, *see* 5 U.S.C. §§ 7501, 7511(a)(1), and thus had no statutory right to appeal such actions to the MSPB, *Wren v. Merit Sys. Prot. Bd.*, 681 F.2d 867, 871 (D.C. Cir. 1982); *accord Shelton v. Dep't of Air Force*, 382 F.3d 1335, 1336–37 (Fed. Cir. 2004). *Second*, although regulations grant the MSPB limited authority to hear a probationer's appeal of his termination, they apply only if "the termination was motivated by partisan political reasons or marital status, and/or . . . was based on a pre-appointment reason." 5 C.F.R. § 1201.3(a)(3); *see Mastriano*, 714 F.2d at 1155. Sagar makes no such allegations here. *Third* and finally, the MSPB has jurisdiction over "[a]ctions based on unacceptable performance" as defined in chapter 43 of the CSRA. 5 C.F.R.

§ 1201.3(a)(5); *see* 5 U.S.C. § 4303(e).  But these appeals, too, are not available to probationers with less than one year of service.  § 4303(f)(2).

Hence, Sagar has not been affected by an action appealable to the MSPB, and "without an action appealable to the MSPB, this Court has no jurisdiction to hear Plaintiff's WPA claims." *Greenhouse*, 574 F. Supp. 2d at 67.  The Court, accordingly, will dismiss Sagar's WPA claims for lack of subject matter jurisdiction.

    2.    *Sagar's APA Claims*

The Department also moves to dismiss Sagar's "APA claims" for lack of jurisdiction on the grounds that the ADEA represents an adequate alternative remedy, rendering the APA's judicial review provisions inapplicable.  Dkt. 55 at 9–10 (citing 5 U.S.C. § 704).  Sagar's opposition clarifies that the "APA claims" at issue are Counts Two and Three, which allege that the Department violated personnel rules in the course of Sagar's termination.  *See* Dkt. 56 at 1.  Specifically, Count Two alleges "Violation of Department and Federal ethical rules and processes in Plaintiff's wrongful annual assessment and termination," and Count Three alleges "illegal termination under federal rules including but not limited to 5 C.F.R. § 315.804 [which governs the termination of probationers for unsatisfactory performance or conduct]."  Compl. ¶ 90.

The Civil Service Reform Act ("CSRA"), however, provides the exclusive remedy for an agency's failure to comply with federal personnel laws.  *See Filebark v. U.S. Dep't of Transp.*, 555 F.3d 1009, 1010 (D.C. Cir. 2009).  "[T]he CSRA is comprehensive and exclusive.  Federal employees may not circumvent the Act's requirements and limitations by resorting to the catchall APA to challenge agency employment actions."  *Grosdidier v. Chairman, Broad. Bd. of*

*Governors*, 560 F.3d 495, 497 (D.C. Cir. 2009).  As such, the APA provides no cause of action under which Sagar can pursue Counts Two and Three of his complaint.

This limitation, moreover, is jurisdictional, in that it derives from a limit in the United States's waiver of sovereign immunity.  *Fornaro v. James*, 416 F.3d 63, 66 (D.C. Cir. 2005); *see also Trudeau v. FTC*, 456 F.3d 178, 185 (D.C. Cir. 2006).  The waiver of sovereign immunity in the APA contains the following proviso:  "Nothing herein . . . confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought."  5 U.S.C. § 702.  This language "excludes from [the APA's] waiver of sovereign immunity . . . claims seeking relief expressly or impliedly forbidden by another statute."  *Fornaro*, 416 F.3d at 66 (quoting *Transohio Savings Bank v. Dir., Office of Thrift Supervision*, 967 F.2d 598, 607 (D.C. Cir. 1993)).  And the CSRA, with one exception, vests jurisdiction to review CSRA claims *exclusively* in the Federal Circuit—not in the U.S. district courts.  *Elgin v. Dep't of Treasury*, 132 S. Ct. 2126, 2133 (2012).  Although district courts may assert jurisdiction over CSRA claims properly presented in "mixed cases," *id.*; 5 U.S.C. § 7702(a)(1)(B), the Court has already concluded that Sagar's claim is not such a case.  It follows that this Court would have no jurisdiction to review Sagar's claims if they had been brought under the CSRA.  This Court thus has no jurisdiction to consider them now.

The Court acknowledges that relief may not have been available for Sagar under the CSRA, given Sagar's probationary status.  But this fact does not affect the Court's analysis, which turns not on the availability of an alternative remedy, but on whether "any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought."  5 U.S.C. § 702.  The CSRA is such a statute.  *Grosdidier*, 560 F.3d at 497.  And the fact that the CSRA largely excludes probationary employees merely evinces Congress's intent not to allow

probationary employees to challenge their removal in district court.  *See Davis*, 681 F.3d at 384,

388 (declining to create a *Bivens* action for probationers because Congress "deliberately . . .

chose to limit the beneficiaries of the CSRA's remedial protections in large part to non-

probationary employees").  It would be anomalous indeed to permit probationary employees—

whom Congress expressly left out of its remedial scheme—to challenge their removal directly in

district court under the APA, while requiring permanent employees—whom Congress *did*

include—to exhaust their CSRA remedies first.  *See Harrison v. Bowen*, 815 F.2d 1505, 1515

(D.C. Cir. 1987).  Thus, as the Court of Appeals has often said, "what you get under the CSRA is

what you get."  *Grosdidier*, 560 F.3d at 497; *Filebark*, 555 F.3d at 1010.

The Court, accordingly, will dismiss Counts Two and Three of Sagar's complaint for lack

of jurisdiction.

**B.**     **Sagar's Motion for Summary Judgment**

Sagar has also brought his own motion for summary judgment.  *See* Dkt. 64.  He seeks

summary judgment, however, only as to Counts Two and/or Three of his complaint.  *See id.* at 1;

Compl. ¶ 90.  That is how the motion is captioned, and the Court confirmed at a status

conference that this was the scope of his motion for summary judgment.  *See* July 1, 2016,

Minute Order.  The Court also noted in its Minute Order following that hearing that this claim

was also subject to the Department's motion to dismiss.  *Id.*  Because the Court has now

dismissed Counts Two and Three of the complaint, Sagar's cross-motion for partial summary

judgment will be denied.

**C.**     **The Department's Remaining Arguments**

The Department's motion to dismiss Counts Four and Six—alleging unlawful retaliation

and a hostile work environment under the ADEA—was premised exclusively on the ground that

the complaint fails to state a claim for which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).

Because the Department has withdrawn the portion of its motion pursuant to Rule 12(b)(6), Dkt.

58, the Court will deny that portion of the motion as moot.

## CONCLUSION

For the reasons stated above, the Department's motion to dismiss, Dkt. 55, is hereby

**GRANTED** in part and **DENIED** in part as moot.  Sagar's motion for summary judgment, Dkt.

64, is hereby **DENIED**.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge


Date:  September 30, 2016.